**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN M. SLANINA,**<br><br>　　　　Plaintiff,<br>**vs.**<br><br>**UNITED RECOVERY SYSTEMS, LP,**<br><br>　　　　Defendant. | **Civil Action No.**<br><br>**3:11-cv-01391-ARC** |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY DEFENDANT, UNITED RECOVERY SYSTEMS, LP**

NOW COMES Defendant, United Recovery Systems, LP ("URS"), by and through its attorneys, Marshall, Dennehey, Warner, Coleman & Goggin, P.C., and submits the following Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint, stating as follows:

**I.   FACTUAL AND PROCEDURAL HISTORY:**

On or about July 27, 2011, Plaintiff, John M. Slanina ("Plaintiff"), filed a Complaint against URS in the United States District Court for the Middle District of Pennsylvania, docket no. 3:11-cv-01391-ARC, alleging that URS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. in attempting to collect a debt obligation from Plaintiff. (A true and

1

correct copy of Plaintiff's Complaint filed in the United States District Court for the Middle District of Pennsylvania on or about July 26, 2011 is attached hereto and marked as Exhibit "A").

URS now files a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), due to the fact that Plaintiff has failed to state a viable claim against URS upon which relief can be granted.

In his Complaint, Plaintiff alleges that URS' attempts to collect a debt obligation that he had previously owed to Citibank South Dakota, N.A. ("Citibank") violated §§ 1692e, 1692e(2(A) and 1692f(1) and of the FDCPA. Plaintiff alleges that he had owed a debt obligation to Citibank South Dakota, N.A. and that, on or around October 26, 2009, Citibank filed suit against him in the Court of Common Pleas of Carbon County, Pennsylvania attempting to recover the owed debt obligation. (Exhibit "A", ¶¶ 8-9). Plaintiff alleges that at the trial of the matter regarding the Citibank debt, the Court ruled in his favor and against Citibank, entering a judgment which resulted in the debt obligation being allegedly unenforceable against him. (Exhibit "A", ¶¶ 11-13).

In May of 2011, Citibank engaged URS to attempt to collect the Citibank debt obligation. On or about May 12, 2011, URS

mailed an initial collection letter to Plaintiff regarding collection of the Citibank debt. (See URS' initial collection correspondence sent to Plaintiff dated May 12, 2011 which is attached hereto and marked as Exhibit "B"). On or about May 27, 2011, URS received correspondence from Plaintiff's counsel advising that the subject debt was extinguished as a result of a judgment in favor of Plaintiff prior to URS' retention by Citibank and informing URS that a suit would be filed against URS pursuant to the FDCPA, based on the knowledge possessed only by Citibank that the subject debt was purportedly extinguished. (See the correspondence from Plaintiff's counsel to URS, dated May 27, 2011, which is attached hereto and marked as Exhibit "C"). Upon receipt of the May 27th letter from Plaintiff's counsel, URS ceased its collection efforts.

Plaintiff erroneously contends that URS violated the FDCPA by using false, deceptive and misleading communications in the course of its efforts to recover on the debt on behalf of Citibank. (Exhibit "A", ¶17-18). Plaintiff alleges that, because the Citibank debt was not enforceable against Plaintiff, URS was prohibited from engaging in any collections efforts on the debt even where URS had no knowledge that the debt was allegedly extinguished prior to URS'

retention by Citibank. Plaintiff's complaint rests on the flawed theory that a debt collector has a duty to investigate the validity of a debt prior to its efforts to recover on the debt. However, this memorandum will show that URS had <u>no duty</u> to investigate the validity of the Citibank debt prior to attempting to collect the debt obligation. URS was only required to rely on the representations made by its client, Citibank, prior to engaging in collection activity. URS did not violate the FDCPA in attempting to collect the debt obligation as it had no duty to investigate the debt prior to attempting to collect it and immediately ceased its collection activities upon receipt of a dispute letter from counsel for the Plaintiff. As such, Plaintiff has failed to state a claim against URS as a clear matter of law and dismissal of the Complaint, with prejudice, is appropriate.

## II.  **STANDARD OF REVIEW:**

Plaintiff's Complaint does not and cannot state a cause of action against URS, as a clear matter of law. "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level....'" <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 234 (3d Cir. 2007) (<u>quoting</u> <u>Bell Atl. Corp. v. Twombly,</u>

4

550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly 550 U.S. at 570).  To satisfy this plausibility standard, the plaintiff's allegations must show that a defendant's liability is more than "a sheer possibility."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief" Id. (quoting Twombly. 550 U.S. at 557).

In Twombly, the Supreme Court established a "two-pronged approach" which was later formalized in Iqbal.  Iqbal, 129 S. Ct. at 1950.  Under this approach, the Court first identifies those factual allegations which constitute nothing more than "legal conclusions" or "naked assertions."  Twombly, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950.  The court then assesses "the 'nub' of the plaintiff['s] complaint--the well-pleaded, nonconclusory factual allegation[s] . . .--to determine" whether it states a plausible claim for relief. Iqbal, 129 S. Ct. at 1950.

5

As previously stated, URS was under absolutely no duty to examine the history of the Citibank debt obligation prior to its engagement into debt collection activity regarding the debt. URS was only required to rely on the information provided by Citibank prior to entering into collection activity regarding collection of the debt. Alas, URS did not violate the FDCPA in attempting to collect the debt and Plaintiff's Complaint should be dismissed due to the fact that he has failed to state a claim against URS.

III. **LEGAL ARGUMENT:**

**URS Had Absolutely No Duty To Investigate The History Of The Citibank Debt And Only Had To Rely On The Information Provided By Its Client Prior To Commencing Its Collection Activity.**

In the current matter, Plaintiff is alleging that URS violated §§ 1692d, 1692e and 1692f of the FDCPA by allegedly attempting to collect a debt obligation which was not enforceable against him. In effect, Plaintiff is arguing that URS should have known that the Citibank debt obligation was unenforceable against him and that the attempted collection of the unenforceable debt obligation constituted false, deceptive and misleading action by URS. However, the FDCPA does not require debt collectors to conduct an

independent investigation into the validity of the underlying claim prior to commencing collection activities and, when collecting on accounts, a debt collector may rely on the information the creditor-clients provide. See Clark v. Capital Credit & Collection Serv., 460 F.3d 1162, 1177 (9th Cir. 2006); Jenkins v. Heintz, 124 F.3d 824, 833-34 (7th Cir. 1997); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1032 (6th Cir. 1992); Shapiro v. Haenn, 222 F. Supp. 2d 29, 44 (D. Me. 2002); McStay v. I.C. Sys., Inc., 174 F. Supp. 2d 42 (S.D. N.Y. 2001); Edwards v. McCormick, 136 F. Supp. 2d 795, 804 (S.D. Ohio 2001); Jenkins v. Union Corp., 999 F. Supp. 1120, 1140-41 (N.D. Ill. 1998).

A debt collector should be able to rely on the representation and implied warranty from its client that the amount was due under the lease or the law. The FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract. See Axtell v. Collections USA, Inc., 2002 WL 32595276, at *8.

"Courts do not impute to debt collectors other information that may be in creditors' files -- for example, that debt has been

7

paid or was bogus to start with." Randolph v. IMBS, Inc., 368 F.3d 726, 729 (7th Cir. 2004). "Verification would be unnecessary if debt collectors were charged with the creditors' knowledge." Id. The Randolph Court further stated that "[w]e have not found any appellate opinion imputing creditors' knowledge to debt collectors." Id.

Moreover, a misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client qualifies as a bona fide error under 15 U.S.C. § 1692k(c). See Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1032 (6th Cir. 1992) (holding the defendant reasonably relied on its client's calculation of the debt owed, and that the resulting misrepresentation in a subsequent communication was a bona fide error pursuant to 15 U.S.C. § 1692k(c)).

In Hubbard v. National Bond & Collection Assoc., 126 B.R. 422, 426 (D. Del. 1991), aff'd, 947 F.2d 935 (3d. Cir. 1991), the plaintiff debtor sued the defendant collector for its efforts to collect a debt that was part of an estate put into bankruptcy prior to the collection efforts. The contact with plaintiff consisted of a single letter, followed by direct telephone communication with the

8

plaintiff. All collection activity ceased following the telephone conversation.

The Bankruptcy Court reasoned that it was against public policy to require a debt collector to fully investigate a debtor's background before proceeding to collect a debt:

> The statutory scheme of the FDCPA thus allows debt collectors to avoid the costs of investigating a debtor's background and ensures a cost effective means by which a debtor and debt collector can exchange information. This is an important part of the FDCPA's statutory scheme. S. Rep. No. 382, 95th Cong., 1st Sess. 2 reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1696 (the FDCPA should function "without imposing unnecessary restrictions on ethical debt collectors.") & 1699; 15 U.S.C. § 1692(e). The plaintiff's contention that debt collectors must bear the entire burden of collecting information concerning debtors ignores the importance of § 1692g and the Congressional intent behind its enactment.

Hubbard, at 428. The trial court went on to explain, "In the present case § 1692g functioned as it was intended. Unaware that [plaintiff] had filed for bankruptcy, National Bond tried to collect a $ 957.15 debt from her. The collection notice contained the required written statement that Ms. Hubbard had a right to contest the debt. Ms.

Hubbard promptly contacted National Bond, contested the debt, and notified it that she had filed for bankruptcy. At this point all debt collection efforts by the defendant ceased. The statutory scheme worked." Id.

In Clark v. Capital Credit & Collection Serv., 460 F.3d 1162 (9th Cir. 2006), Plaintiffs alleged that Capital Credit & Collection Services, Inc. ("Capital") violated the FDCPA in its attempts to collect past due medical bills that were incurred by Mrs. Clark for mental health treatment she had received. Among Plaintiffs' various allegations were that Capital failed to properly validate the debt obligation after receiving correspondence disputing the debt obligation. Id. at *1173. The facts of the case showed the Capital verified the balance of the debt obligation with its client and provided Plaintiffs with an itemized statement regarding the balance based on the information provided by Capital's client. Id. The Court found that Capital was entitled to rely on its client's statements to verify the debt obligation and that a debt collector may reasonable rely upon information provided by a creditor who has provided accurate information in the past. Id. at *1174 citing Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 392 (D. Del.

1991). The Court also ruled that the FDCPA does not impose upon a collector any duty to investigate independently the claims presented by a particular creditor. Id. citing Alco Collections, Inc., 931 F. Supp. 459, 462 (M.D. La. 1996). Finally, the Court followed the ruling in Chaudhry v. Gallerizzo, 174 F.3d 394 (4th Cir. 1999) where the Fourth Circuit Court of Appeals simply and effectively stated that "debt collectors do not have to 'vouch for the validity of an underlying debt.'" Id.

In Edwards v. McCormick, 136 F. Supp. 2d 795 (S.D. Ohio 2001), Mrs. Edwards brought an action against Mr. McCormick, an attorney debt collector, pursuant to the FDCPA alleging, *inter alia*, that Mr. McCormick violated § 1692e by falsely representing that Plaintiff had the legal obligation to pay debts for medical treatment obtained by her husband that she allegedly did not owe. The facts of this matter show that Mr. McCormick sent correspondence to Mrs. Edwards seeking to collect medical payments owed by her husband to Hocking Valley Community Hospital for medical services he received prior to his death. Id. at 797. Mrs. Edwards claimed that, because she did not sign documentation establishing her as a financially responsible party for the medical services

11

rendered to her husband, she could not be legally accountable for his debts. Id. at *803. Thus, Mrs. Edwards alleged that Mr. McCormick violated § 1692e(2) by attempting to collect a debt obligation that she did not owe. Id. Mr. McCormick argued that he relied on his client to provide him with accurate information as to the amounts of the debt and the responsible parties for the debt and that, as he acted on such information provided by his client, he was entitled to a bona fide error defense pursuant to § 1692k(c) for any causes of action stemming from inaccurate information provided by his client. Id. The Court ruled that debt collectors may rely upon information provided by a client when attempting to collect a debt obligation and that § 1692k(c) will provide protection to a debt collector who is not willfully blind to the inaccuracy of such information attributable to the mistake of the client. Id. at *804 citing Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1032 (6th Cir. 1992). As such, Mr. McCormick was not found liable for attempting to collect a debt obligation through the information that was provided by his client.

In the current matter, URS was engaged by Citibank South Dakota, N.A. in May of 2011 to collect a debt obligation that

Citibank represented was owed by Plaintiff, John Slanina. Relying on the information provided by its client, on May 12, 2011, URS sent correspondence to Plaintiff regarding payment of the debt (See Exhibit "B"). On or around May 27, 2011, URS received correspondence from Plaintiff's counsel informing URS that Plaintiff did not owe the debt obligation as a judgment of non-suit regarding the debt obligation was entered in favor of Plaintiff by the Court of Common Pleas of Carbon County, Pennsylvania. (See Exhibit "C"). After receiving the May 27, 2011 correspondence from Plaintiff's counsel, URS ceased its collection activities regarding the Citibank debt obligation. However, up until the point where URS received notification that Plaintiff did not owe the debt obligation, through its reliance on the information provided by its client, Citibank, it was not in violation of any provision of the FDCPA in attempting to collect the debt obligation. URS did not have a duty to investigate independently the representations made by Citibank due to the fact that the FDCPA does not require an independent investigation of the information provided by a client when a debt collector tries to collect a debt. URS was able rely upon information provided by Citibank in attempting to collect the debt obligation from Plaintiff

and § 1692k(c) will provide URS with protection in the form of a bona fide error defense in that, as it has a long standing relationship with Citibank in being engaged to collect debt obligations on its behalf, it was not willfully blind to any inaccuracies of information attributable to any mistakes that could have been made by Citibank regarding collection of the debt obligation from Plaintiff.  Because URS was under absolutely no duty to investigate the validity of the debt obligation prior to attempting to collect the debt from Plaintiff, because URS was only required to rely on the representations provided by Citibank in attempting to collect the debt and because it ceased its collection efforts immediately after it received information regarding the fact that the debt obligation may not have been owed by Plaintiff, it did not violate the FDCPA in attempting to collect the debt at issue in this matter.  As such, Plaintiff's Complaint fails to state a claim against URS upon which relief may be granted and it should therefore be dismissed, with prejudice.

## IV. <u>CONCLUSION</u>:

Defendant, United Recovery Systems, LP, respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Complaint, dismissing Plaintiff's claims in his Complaint and awarding costs and fees, and other relief as the Court deems appropriate.

            Respectfully submitted,

            **MARSHALL, DENNEHEY, WARNER,**
            **COLEMAN & GOGGIN, P.C.**

    BY:   */s/Ronald M. Metcho / rmm202807*
            RONALD M. METCHO, ESQUIRE
            1845 Walnut Street, 17th Floor
            Philadelphia, PA 19103
            215-575-2595 / 215-575-0856 (f)
            rmmetcho@mdwcg.com
            Attorneys for Defendant
            United Recovery Systems, LP

Dated: <u>August 22, 2011</u>